# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF DELAWARE

KATHRYN MILLER,                    )
                                   )
        Plaintiff,              )    C.A. Number: 05-145 GMS
                                   )
      v.                        )
                                   )    **Trial By Jury Demanded**
GEOX USA, INC., and GEOX SPA,      )
                                   )
        Defendants.             )

## ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## BIGGS AND BATTAGLIA

By:   /s/ Robert D. Goldberg
     Robert D. Goldberg (ID # 631)
     Biggs and Battaglia
     921 North Orange Street
     P.O. Box 1489
     Wilmington, DE  19899
     (302) 655-9677
DATED:  8/11/2005     Attorney for Plaintiff

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.      THE TITLE VII COUNT SHOULD NOT BE DISMISSED . . . . . . . . . . . . . . . . . 5

    II.     PLAINTIFF CAN PURSUE HER STATE LAW
           DISCRIMINATION CLAIM IN FEDERAL COURT. . . . . . . . . . . . . . . . . . . . . . 6

    III.    THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED . . . . . . . . . . 8

    IV.   THE PENDENT CLAIMS SHOULD NOT BE DISMISSED . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **TABLE OF AUTHORITIES**

### **Cases**
*Anjelino v. New York Times Co.*
    200 F.3d 73 (C.A.3 (N.J.),1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Boone v. Goldin* 178 F.3d 253 (C.A.4 (Va.),1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Borough of West Mifflin v. Lancaster*
    45 F3d 780, 788 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fallon v. Meissner,* 6 Fed.Aptx.348 (3dCir. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Francis v. Board of School Com'rs of Baltimore City*
    32 F.Supp.2d 316 (D.Md.,1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jones v. Communication Workers of America, Local 3204*
    534 F. Supp. 566 at 570 (N.D. Ga. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mallory v. Noble Correctional Institute*
    45 Fed.Appx. 463, (C.A.6 (Ohio) 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mitchell v. Vanderbilt University*
    389 F.3d 177 (C.A.6 (Tenn.) 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Owens v. Kaiser Foundation Health Plan, Inc.*
    244 F.3d 708 (C.A.9 (Cal.),2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pietras v. Board of Fire Com'rs of Farmingville Fire Dist*
    180 F.3d 468, (C.A.2 (N.Y.),1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Robinson v. City of Pittsburgh,* 120 F3d 1386 (3dCir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ward v. Johns Hopkins University* 861 F.Supp. 367 (D.Md., 1994) . . . . . . . . . . . . . . . . . . . . . 9

### **Unreported Decisions**
*Collier v. Target Stores Corp.*
    Civ.No. 03-1144-SLR, 2005 U.S. Dist. Lexis 6262 (D.Del. April 13, 2005) . . . . . . . . . 9

**Statutes**

F.R.C.P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

F.R.C.P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Civ.P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

19 Del.C. Ch. 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 Del. C. §715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## NATURE AND STAGE OF PROCEEDINGS

Defendant, GEOX USA, Inc. ("Geox") a Delaware corporation is seeking to dismiss the amended complaint filed by Plaintiff, Katherine Miller in the above captioned matter. Defendants' Motion to dismiss Plaintiff's Amended Complaint was filed on July 25, 2005. It is denominated, by Defendant, as a Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c). Accompanying the Motion was Defendant's Opening Brief in Support of its Motion. This is Plaintiff's answering Brief in Opposition to Defendant's Motion for Judgment on the Pleadings.

## SUMMARY OF ARGUMENT

1.      It is not necessary to plead the existence of a Right to Sue notice from the EEOC in a complaint. Further, the issuance of a Right to Sue notice under the circumstances of this case is a mere ministerial act involving no substantive rights. The failure to obtain a Right to Sue notice from the EEOC at the time the suit is filed is not therefore a fatal defect.

2.      The Court should not dismiss Count II of the Complaint because 19 <u>Del.C.</u> Ch. 7 specifically provides that a charging party may elect a Delaware or Federal forum to prosecute their Employment Discrimination claim.

3.      Count I of the Amended Complaint alleges actionable, discriminatory action on the part of the Defendant and therefore should not be dismissed.

4.      Plaintiff's Federal Law claim is viable and therefore the Court should exercise supplemental jurisdiction over Counts II and III of Plaintiff's Complaint. In the alternative, if the Court dismisses Plaintiff's federal law claim, the Court should remand the State law claims to a State court.

## STATEMENT OF FACTS

In her Complaint, Plaintiff sets forth the facts and circumstances that give rise to her causes of action. In sum, the Complaint alleges that Plaintiff is a White, English-speaking female and a United States citizen with approximately twenty (20) years of experience in accounting and bookkeeping. (Complaint, paragraph 6.) She worked for Defendant GEOX USA starting in February of 2002. (Complaint, paragraph 7.)

In March of 2003 Plaintiff sought either a higher salary commensurate with her workload or to be made a part-time employee at her then current salary. (Complaint, paragraph 9.) Her request for a raise in salary was denied and she was instead made a part-time employee at her same salary. (Complaint, paragraph 10.) After she was made a part-time employee, she secured a part-time job with another employer. (Complaint, paragraph 11.) In May of 2003 she was asked to resume full-time work for GEOX USA and, as an inducement for her to leave her other part-time position, Plaintiff was offered the position of Controller of GEOX USA. (Complaint, paragraph 12.) Plaintiff accepted the offer and resumed working full time for GEOX USA.

It soon became apparent that Plaintiff was the Controller in name only as she was treated differently than the other management employees who were of Italian origin and denied the authority normally associated with the position of Controller. (Complaint, paragraph 14.) Equally as troubling, it also became apparent that Defendant was grooming an employee of Italian origin for the Controller's position and that she had been hired as a full-time employee merely as a stop gap measure until the new, Italian employee could assume that position. (Complaint, paragraph 14.) Disenchanted with her treatment, Plaintiff tendered her resignation in July of 2003. In response, her supervisor encouraged her to stay and promised to address the sources of Plaintiff's frustration which he described as "cultural differences". (Complaint, paragraph 15.) Nonetheless, although

3

Plaintiff retracted her resignation and continued to work, the discriminatory treatment of Plaintiff never ceased. Defendant continued to groom her successor, who was of Italian origin, to take her position. (Complaint, paragraph 16.) Plaintiff was not consulted on decisions, nor was she given the authority to make decisions that were normally within the purview of her job position as Controller. (Complaint, paragraph 17.) Further, when Plaintiff complained about discriminatory hiring practices of the Defendant and its parent GEOX SPA, she was excluded from the screening process for new employees, even though that was an ordinary part of her job duties. (Complaint, paragraph 19.) In order to further exclude Plaintiff from participating in management decisions, the managers would often talk to each other in Italian. (Complaint, paragraph 18.)

Defendants' final act of discrimination was to fire Plaintiff under the pretext of accepting her resignation, even though that resignation had been withdrawn and she continued to work after Defendant had promised to address its discriminatory practices. (Complaint, paragraphs 15, 16.) Plaintiff thus worked on a full-time basis during Defendants' busiest season in reliance upon promises made by Defendant that the problems she had identified would be addressed. Those problems were never addressed and, after Plaintiff had performed her duties during that busy period, Plaintiff was terminated and replaced with a Controller of Italian origin.

## ARGUMENT

## I. <u>THE TITLE VII COUNT SHOULD NOT BE DISMISSED.</u>

In the first count of her Amended Complaint, Plaintiff alleges discrimination by Defendant in violation of Title VII. Defendant moves to dismiss Count I based on Plaintiff's failure to comply with the administrative requirements for her claim and specifically for failing to obtain a Right to Sue letter. Citing *Jones v. Communication Workers of America, Local 3204,* 534 F. Supp. 566 at 570 (N.D. Ga. 1982) Defendant contends that the Right to Sue letter is more than a procedural nicety and that in its absence, a Plaintiff's Title VII claims must be dismissed. According to Defendant, the requirement of obtaining a Right to Sue letter serves three separate purposes, which can be summarized as follows:

1.    Fostering private dispute resolution;

2.    Prevention of concurrent Court and Agency action; and

3.    The regulation of the Statute of Limitations for private actions.

Initially, it must be noted that Defendant does not explain how the dismissal of the Title VII count would further any of the three policy considerations cited above.[1]  Moreover, there are two additional reasons why Plaintiff's Title VII claim should not be dismissed.

First, there is no pleading requirement that requires Plaintiff to allege that a Right to Sue letter was obtained.  Thus, on the pleadings record alone, there is not a sufficient basis to decide this issue.

Second, a Right to Sue letter is not a jurisdictional requirement.

A right-to-sue letter is a condition precedent for a Title VII action, and is not jurisdictional. *Rivers v. Barberton Bd. of Educ.,* 143 F.3d 1029, 1031 (6th Cir.1998) (concluding that "a right-to-sue letter is merely a condition precedent, and not a

---

[1] Although Plaintiff believes that a denial of Defendant's motion would not conflict with any of the three purposes enumerated by Defendant in its brief, this is a motion for judgment on the pleadings. It is not therefore appropriate – and there is an insufficient record – for plaintiff to so argue.

jurisdictional requirement, to bringing a Title VII action"); see also *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 309 (6th Cir.2000) ("[T]he failure to obtain a right-to-sue letter is not a jurisdictional defect; rather the right-to-sue letter is a condition precedent."). As a condition precedent, a party or the court can waive the right-to-sue letter requirement. See Parry, 236 F.3d at 309.

*Mallory v. Noble Correctional Institute,* 45 Fed.Appx. 463, *468 (C.A.6 (Ohio) 2002)

Because the Right to Sue letter is not jurisdictional, its absence can be waived or cured.

See, *e.g. Pietras v. Board of Fire Com'rs of Farmingville Fire Dist.* 180 F.3d 468, *474 (C.A.2

(N.Y.),1999) holding that a right to sue letter can be waived by the parties or the court. See also,

*Owens v. Kaiser Foundation Health Plan, Inc.* 244 F.3d 708 (C.A.9 (Cal.),2001) which states:

> ....Appellants had ample time to secure "right to sue" letters prior to filing their first action in November of 1995. Alternatively, they could have sought a stay from the district court pending their administrative proceedings before the EEOC....

*id.,* 715

Here, there is no reason why the Plaintiff cannot cure this non-jurisdictional, ministerial

deficiency.  In fact, if not explicitly, at least implicitly, Courts have held that the requirement of a

Right to Sue letter can be cured by a timely application for such a letter. *Owens v. Kaiser

Foundation Health Plan, Inc. , supra.*; See also, *Anjelino v. New York Times Co.,*  200 F.3d 73

(C.A.3 (N.J.),1999) which held that an Employee's failure to obtain  a right-to-sue letter from the

Equal Employment Opportunity Commission (EEOC) prior to filing an amended complaint

containing a Title VII retaliation claim did not constitute failure to exhaust administrative remedies

where employee had previously received a right-to-sue letter with respect to the initial charge.

## II.    PLAINTIFF CAN PURSUE HER STATE LAW
## DISCRIMINATION CLAIM IN FEDERAL COURT.

Defendant argues that the claim for discrimination under the Delaware Discrimination and

Employment Act (the "Act") as set forth in Count II of the Complaint may only be pursued in State

court. Defendant bases its contention on 18 Del. C. §715 of the Act, which provides that "Superior Court shall have jurisdiction over all proceedings brought by the charging party pursuant to §714 of this Title." In its entirety, §714 reads as follows:

### § 714 Civil action by the charging party; Delaware Right to Sue Notice; election of remedies.

(a) A charging party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.

(b) The Delaware Right to Sue Notice shall include authorization for the charging party to bring a civil action under this chapter in Superior Court by instituting suit within 90 days of its receipt or within 90 days of receipt of a federal Right to Sue Notice, whichever is later.

(c) The charging party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A charging party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the charging party files in Superior Court and in a federal forum, the respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

As shown above, §714 does not state that Superior Court has sole jurisdiction of claims under the Act. In fact, it provides that a "...charging party may file a civil action in Superior Court" It does not say the party "shall" file in Superior Court, nor is there language in the statute which states that Superior Court shall have sole and exclusive jurisdiction of all claims under the Act. Indeed, the Act provides that "The charging party may elect a Delaware or federal forum to prosecute the employment discrimination cause of action..." It goes on to prohibit the filing of charges in both state and federal forums, providing that in such case the state proceeding can be dismissed.

Finally, Defendant cites no case law stating that the Superior Court has exclusive jurisdiction under the Act. In the absence of an affirmative statement of exclusive state court jurisdiction, Defendant's motion to dismiss should be denied.

### III.    THE AMENDED COMPLAINT SHOULD NOT BE DISMISSED

Defendant urges the Court to dismiss Plaintiff's discrimination claim on the basis that the allegations in the Complaint are vague and conclusory. Defendant's brief, page 10. In fact, the complaint does meet the pleading requirements for a federal case. It alleges that the Plaintiff was discriminated against and denied the authority normally associated with the position of Controller because of her ethnic origin. It cites specific examples, *i.e.,* Plaintiff's exclusion from the hiring process, the speaking of Italian in order to exclude her and her ultimate firing.  These allegations clearly meet the pleadings requirements.

F.R.C.P. 8(a)(2) provides that a complaint contain a "...short and plain statement of the claim..." Importantly, Defendant does not claim that the complaint must contain the particular allegations required when pleading special matters under F.R.C.P. 9. Here, the Complaint does just what is required by the rules. It gives notice of the claim by alleging that the Plaintiff was discriminated against with regard to her job duties and assignments. Further, it provides examples such as Plaintiff's exclusion from the hiring process.[2]

Plaintiff does agree that the discrimination against her must be material for her to have a cause of action. Thus, Plaintiff does not quarrel with the cases cited by Defendants such as *Robinson v. City of Pittsburgh,* 120 F3d 1386 (3dCir. 1997) and *Fallon v. Meissner,* 6 Fed.Aptx.348

---

[2] Defendants also argue that hiring is not one of the functions one normally associates with the position of Controller. Of course, there are no pleadings or fact-findings to support this assertion. Similarly, Defendant takes issue with the allegation that Plaintiff was excluded from decisions when the other managers spoke in Italian. Defendant implies that these managers may not have been able to speak English, even though the obvious basis for the assertion was that they could speak English but were speaking Italian in order to exclude the Plaintiff from their conversations.

8

(3dCir. 2003).  Here, the discrimination was indeed material.  Thus, the complaint states that Plaintiff's job duties were circumscribed because of her national origin, that she was falsely told that the problem would be addressed and it was not, and that she was then terminated.  Certainly, these actions meet the materiality standard.

Further, in the cases cited by Defendant, the dismissals were not based merely on the pleadings contained in a complaint, but were instead rendered on summary judgment, after a record had been created.  Thus, *Collier v. Target Stores Corp.,* Civ.No. 03-1144-SLR, 2005 U.S. Dist. Lexis 6262 (D.Del. April 13, 2005) was decided on a Motion for Summary Judgment based upon an ample record as shown by the numerous references by the Court to the docket. Similarly, *Francis v. Board of School Com'rs of Baltimore City* 32 F.Supp.2d 316 (D.Md.,1999), *Mitchell v. Vanderbilt University* 389 F.3d 177 (C.A.6 (Tenn.) 2004), *Boone v. Goldin* 178 F.3d 253 (C.A.4 (Va.),1999) and *Ward v. Johns Hopkins University* 861 F.Supp. 367 (D.Md., 1994) are all summary judgment cases, decided after a record was created and the plaintiff was given a fair opportunity to present the factual detail underlying the discrimination claim.  Here, Plaintiff has yet to be provided with such an opportunity.

## IV.  THE PENDENT CLAIMS SHOULD NOT BE DISMISSED.

Defendant cites the general rule in the Third Circuit that: "…in the absence of viable Federal law claims, the Court should decline to exercise jurisdiction over State law claims, "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Defendant's brief at page 12 citing *Borough of West Mifflin v. Lancaster,* 45 F3d 780, 788 (3d Cir. 1995).

Here, as shown in Argument I, dismissal of the Title VII claim is not warranted and therefore the state claims should not be dismissed.  In the event that the Court does decide to

9

dismiss the state claims, Plaintiff should have an opportunity to transfer her state claims to a state court so that the charges therein relate back to the original filing in this Court in the interest of "fairness to the parties".

## CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss should be denied.

**BIGGS AND BATTAGLIA**

By:     /s/ Robert D. Goldberg
Robert D. Goldberg (ID No. 631)
921 N. Orange Street, P.O. Box 1489
Wilmington, DE 19899
(302) 655-9677
(302) 655-7924 (fax)

Dated:  August 11, 2005

11

# EXHIBIT A

Westlaw.

Slip Copy                                                      Page 1

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

(Cite as: 2005 WL 850855 (D.Del.))

C

Motions, Pleadings and Filings

United States District Court,
D. Delaware.
Michelle **COLLIER**, Plaintiff,
v.
**TARGET** STORES CORPORATION, Defendant.
**No. CUV. 03-1144-SKR.**

April 13, 2005.

William D. Fletcher, and Noel E. Primos, of Schmittinger & Rodrigues, P.A., Dover, Delaware, for Plaintiff.

Sherry Ruggiero Fallon, of Tybout, Redfearn & Pell, Wilmington, Delaware, for Defendant, Abbey G. Hairston, of Seyfarth Shaw, L.L.P., Washington, District of Columbia, of counsel.

MEMORANDUM OPINION

**ROBINSON**, Chief J.

I. INTRODUCTION

*1 On December 17, 2003 plaintiff Michele **Collier** instituted this litigation against defendant **Target** Stores Corporation, alleging in her complaint: (1) violation of the Family and Medical Leave Act ("FMLA"); (2) breach of the implied covenant of good faith and fair dealing; (3) violation of 19 Del. C. § 709; and (4) slander. (D .I. 1) On July 12, 2004, plaintiff filed a second lawsuit against defendant, alleging the same set of facts as in the first lawsuit, but including a new claim for alleged violation of the Americans with Disabilities Act ("ADA"). Based on a stipulation by the parties (D.I.30), this court consolidated the two lawsuits, thereby adding plaintiff's ADA claim to the present matter. This court has jurisdiction over plaintiff's

FMLA and ADA claims under 28 U.S.C. § 1331 and over plaintiff's breach of the implied covenant of good faith and fair dealing, violation of 19 Del. C. § 709, and slander claims under 28 U.S.C. § 1367(a). Presently before the court is defendant's motion for summary judgment. (D.I.46) For the reasons set forth below, the court grants defendant's motion for summary judgment against plaintiff's ADA, breach of implied covenant of good faith and fair dealing, slander, and 19 Del. C. § 709 claims, but denies defendant's motion for summary judgment against plaintiff's FMLA claim.

II. BACKGROUND

In March 2001, defendant opened a new store in Dover, Delaware (the "Dover Store"). (D.I. 48, ex. 1 at A3) In addition to selling goods to the general public, the Dover Store also offered a pharmacy. Plaintiff was hired by defendant as Head Pharmacist in the Dover Store in December of 2000. (D.I. 1 at 2; D.I. 47 at 3) At or around the same time, Ellicia Weber ("Weber") was transferred to the Dover Store as a part-time pharmacist. (D.I. 48 at A14-A15, A182) The pharmacy staff at the Dover Store included plaintiff, Weber, and pharmacy technicians. (D.I. 47 at 4-5; D.I. 48 at A8-A9) At all times relevant to this action, plaintiff was supervised by Area Pharmacy Manager Michael Thomas ("Thomas"), Store Team Leader James Bellamy ("Bellamy"), and Regional Human Resources Director Todd Landis ("Landis"). (D.I. 48 at A4, A172, A282- A283)

During 2001, Bellamy and Thomas noted that plaintiff and Weber were having problems getting along. (D.I. 48 at A6-A14, A187-A189) On February 26, 2002, plaintiff submitted her resignation to Bellamy and Thomas. (D.I. 48 at A270) Thomas asked plaintiff to withdraw her resignation and she agreed. (D.I. 48 at A208-A210)

In March 2002, plaintiff became aware that Weber

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 2

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

(Cite as: 2005 WL 850855 (D.Del.))

had incorrectly filed a Class II narcotic prescription. (D.I. 48 at A18-A20, A191) Specifically, a customer received a generic prescription but did not like the medication and returned it to the pharmacy. Weber accepted the medication, which was a violation of Delaware law. (D.I. 48 at A18-A20, A192) Plaintiff reported the misfiling of the prescription to the Delaware State Board of Pharmacy (the "State Board"). (D.I. 48 at A298) Despite investigating the complaint, the State Board took no formal action against either Weber or defendant regarding this incident. (D.I. 48 at A196-A197)

*2 In late March of 2002, plaintiff experienced migraine headaches and sought FMLA leave from April 3 through April 22. (D.I. 48 at A127-A128, A207) Neither Bellamy nor Landis were aware of the reason why plaintiff sought leave. (D.I. 48 at A39-A43, A301-A302) Thomas was aware that plaintiff's leave was taken due to stress, but was not told that the stress was work related. (D.I. 48 at A207-A208) Plaintiff sought an extension of her FMLA leave up through May 13, 2002, which defendant approved. (D.I. 48 at A271-A272) In seeking the extended period of leave, plaintiff released her medical history to defendant. (D.I. 48 at A273) Plaintiff's physician filled out a statement indicating that plaintiff suffered from "major depression" and "generalized anxiety." (D.I. 48 at A274) Plaintiff's physician had begun treating her for anxiety attacks in May 1998. (D.I. 48 at A275)

While plaintiff was on leave, Thomas telephoned her at home. (D.I. 48 at A211- A212, A277) Since defendant had a policy of not contacting employees on leave, plaintiff filed a complaint regarding this call. (D.I. 48 at A214, A277-A278; D.I. 53 at B37)

Although plaintiff was scheduled to return to work on May 13, 2002, she did not report for work or provide notice from her doctor of the need for additional leave. On May 13, Thomas sent an email to Landis inquiring whether he could "act fast and consider [plaintiff] a no show and abandoned her job [.]" (D.I. 53 at B1) Defendant contacted plaintiff and requested that she provide additional information to support her need for more leave.

On May 16, 2002, while plaintiff was still on leave, Thomas sent an email to Landis inquiring whether he could remove plaintiff from the Pharmacy Third Party Committee (the "Committee"), [FN1] "as she has been unavailable to the team for many weeks." (D.I. 48 at A280) On May 18, 2002, Landis responded by indicating that he supported removing plaintiff's Committee responsibilities. (D.I. 48 at A279)

> FN1. The Pharmacy Third Party Committee was responsible for marketing to help drive pharmacy sales, and to help pharmacists at other stores with third-party (i.e., insurance) billing questions. (D.I. 47 at 8; D.I. 52 at 7)

On May 24, 2002, plaintiff sent an email to Thomas confirming that she would not be back to work until June 24, 2002. (D.I. 48 at A335; D.I. 53 at B38) On June 7, 2002, defendant issued a new policy on pharmacy lunch breaks. The policy required that pharmacists remain in the store during their lunch period. (D.I. 48 at A340-A349) This policy was published on defendant's intranet and Weber informed plaintiff of the policy change when plaintiff returned to work on June 24, 2002. (D.I. 48 at A136)

On July 23, 2002, Thomas verbally reprimanded plaintiff for allegedly not using "FFF" ("Fast, Fun, and Friendly") communications with Weber. (D.I. 48 at A350) In an August 17, 2002 email, plaintiff confirmed that she was still having trouble communicating with Weber. (D.I. 48 at A351-A352)

In October 2002, plaintiff closed the pharmacy during her lunch break in order to fill a prescription at another pharmacy. [FN2] In so doing, plaintiff violated defendant's policy on pharmacy lunch breaks. When plaintiff returned to the pharmacy, she was questioned by Rod Rodriguez ("Rodriguez"), Assets Protection Team Leader. (D.I. 48 at A232-A235) Thomas was present when Rodriguez confronted plaintiff about violating the store's policy. (D.I. 48 at A232)

> FN2. Defendant had a policy forbidding

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                 Page 3

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

(Cite as: 2005 WL 850855 (D.Del.))

pharmacists from filling their own prescriptions. (D.I. 53 at B41)

*3 Before any final decision was made regarding possible sanctions for plaintiff's violation of the pharmacy lunch break policy, plaintiff sought and obtained a second FMLA leave of absence. On October 10, 2002, plaintiff's doctor provided defendant with a note indicating that plaintiff needed two weeks of leave due to the "situation and stress work represents." (D.I. 48 at A355) On October 14, 2002 Thomas sent an email to Landis stating plaintiff's leave of absence would "take her up to [her requested] vacation [time] (convenient)[.] It will be forever before we can address her!" (D.I. 53 at B3) On October 23, 2002, plaintiff's doctor provided additional information to support her request for leave extended beyond October 26, 2002 to November 23, 2002. (D.I. 48 at A356) Plaintiff then sought leave through January 1, 2003. (D.I. 48 at A358) Defendant approved these requests. (D.I. 48 at A357-A358)

During plaintiff's second FMLA leave, Landis contacted her concerning certain checks she had presented to defendant which allegedly were returned for insufficient funds. (D.I. 48 at A376) Defendant classifies an employee's issuance of a dishonored check as a minor offense. (D.I. 48 at A373-A374) When plaintiff investigated the matter, she found that two of the checks were not accepted by defendant's bank because they had been presented electronically. (D.I. 48 at A376)

Plaintiff returned to work on January 6, 2003, on a reduced work schedule of four hours per day for three to four days per week. (D.I. 48 at A377) Even though this reduced work schedule continued up until plaintiff ceased working for defendant, she continued to be paid as a full-time employee. [FN3] (D.I. 48 at A321-A322; A377-A381)

> FN3. Plaintiff contests this statement, alleging that she returned to full-time status before she ceased working for defendant. However, plaintiff fails to point to any evidence to support her position. In contrast, defendant points to several notes

from plaintiff's psychiatrist from January 27, 2003 through plaintiff's last day working for defendant which only allowed plaintiff to work part-time. (D.I. 48 at A378-A381)

Sometime after plaintiff's return from her second FMLA leave, defendant installed a camera over the pharmacy so that activities of the pharmacy employees could be observed. (D.I. 48 at A64-A82, A147, A388-390; D.I. 53 at B14)

On January 24, 2003, Bellamy and Landis met with plaintiff and provided her with two final warnings--one related to the passing of bad checks and the other related to violation of the policy regarding pharmacy lunch breaks. (D.I. 48 at A382-A384)

In February 2003, defendant issued an evaluation of plaintiff's 2002 work performance (the "2003 Evaluation"). (D.I. 52 at 13; D.I. 53 at B6-B12) Plaintiff received an overall score of sixty-nine, which translated to "Satisfactory." (D.I. 53 at B7) In plaintiff's only previous evaluation (the "2002 Evaluation"), she received a score in the eighties, which corresponded to "Excellent." (D.I. 53 at B7, B98)

In May 2003 plaintiff filed an incident report on Weber when Weber issued a medication with an improperly high dosage. (D.I. 48 at A82-A83, A151-A154)

While plaintiff continued to work on a reduced schedule, Weber was charged with creating the work schedule for the pharmacy technicians. (D.I. 48 at A95, A157-A159, A245) One of the technicians complained to plaintiff about her schedule and plaintiff changed the schedule without consulting with Weber. (D.I. 48 at A157) On May 12, 2003, Thomas met with plaintiff and informed her that she was to leave the scheduling to Weber. (D.I. 48 at A391)

*4 On June 2, 2003, plaintiff submitted her two weeks' notice. (D.I. 48 at A394-A395) Bellamy accepted her resignation and advised her that she

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

**(Cite as: 2005 WL 850855 (D.Del.))**

need not report to work, but would be paid for the two weeks. (D.I. 48 at A97-A98, A161- A162, A328)

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

IV. DISCUSSION

A. The Family and Medical Leave Act

Congress enacted the FMLA to help working men and women balance the conflicting demands of work and personal life. 29 U.S.C. § 2601(b)(1). The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: ... (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. The FMLA also provides for "intermittent" leave, which allows an employee to take such leave intermittently when medically necessary. 29 U.S.C. § 2612(b).

There are two types of claims an employee can bring against an employer under the FMLA, "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ('An employer is prohibited from discriminating against employees ... who have used FMLA leave.')." *Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1206-07 (11th Cir.2001); *see also Bachelder v. Am. W. Airlines, Inc.,* 259 F.3d 1112, 1122 (9th Cir.2001); *Thomas v. Pearle Vision, Inc.,* 251 F .3d 1132, 1139 (7th Cir.2001); *Peter v. Lincoln Technical Inst., Inc.,* 255 F.Supp.2d 417, 438 (E.D.Pa.2002); *Marrero v. Camden County. Bd. of Social Servs.,* 164 F.Supp.2d 455, 463 (D.N .J.2001) .

***5** Retaliation claims under the FMLA are analyzed under the burden shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Bearley v. Friendly Ice Cream Corp.,* 322 F.Supp.2d 563, 571 (M.D.Pa.2004); *Baltuskonis v. U.S. Airways, Inc.,* 60 F.Supp.2d 445, 448 (E.D.Pa.1999); *Lepore v. Lanvision Sys., Inc.,* No. 03-3619, 2004 WL 2360994, at *3 (3d Cir.2004). *McDonnell Douglas* sets forth a three-step analysis for retaliation claims. First, the plaintiff must establish a prima facie case of retaliation. A prima facie case of retaliation under the FMLA is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                       Page 5

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

(Cite as: 2005 WL 850855 (D.Del.))

established by showing: (1) plaintiff availed herself of a protected right under the FMLA; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action. *Conoshenti v. Pub. Serv. Elec & Gas Co.,* 364 F.3d 135 (3d Cir.2004); *Bearley,* 322 F.Supp.2d at 571; *Baltuskonis,* 60 F.Supp.2d at 448. "After establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Bearley,* 322 F.Supp.2d at 571; *see also Baltuskonis,* 60 F.Supp.2d at 448. "Finally, if a legitimate non-discriminatory reason is provided, the plaintiff must present evidence to show that the defendant's proffered reasons were not its true reasons, but were merely a pretext for its illegal action." *Baltuskonis,* 60 F.Supp.2d at 448; *see also Bearley,* 322 F.Supp.2d at 571. In order to survive summary judgment, a plaintiff must "either (i) discredit[ ] the [defendant's] proffered reasons ..., or (ii) adduc [e] evidence ... that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Torre v. Casio,* 42 F.3d 825, 830 (3d Cir.1994) (discussing *McDonnell Douglas* shifting burden in an Age Discrimination in Employment Act ("ADEA") case).

Third Circuit opinions that have dealt with the FMLA have only involved termination of the plaintiff. *Conoshenti v. Pub. Serv. Elec & Gas Co.,* 364 F.3d 135 (3d Cir.2004); *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375 (3d Cir.2002); *Chittister v. Dep't of Cmty. & Econ. Dev.,* 226 F.3d 223 (3d Cir.2000); *Churchill v. Star Enters.,* 183 F.3d 184 (3d Cir.1999); *Victorelli v. Shayside Hosp.,* 128 F.3d 184 (3d Cir.1997); *Lepore v. Lanvision Sys., Inc.,* No. 03-3619, 2004 WL 2360994, at *3 (3d Cir.2004); *Conroy v. Township of Lower Merion,* No. 02-3217, 2003 WL 22121002 (3d Cir.2003); *Katekovich v. Team Rent A Car,* No. 00-2389, 2002 WL 1288766 (3d Cir.2002); *Barcola v. Interim Healthcare Servs., Inc.,* No. 01-1993, 2002 WL 463286 (3d Cir.2002). Thus, the Third Circuit has not had the opportunity to explain what constitutes an adverse employment action under the FMLA. However, several Third Circuit opinions have examined the meaning of "adverse employment actions" under Title VII, the ADA, and the ADEA.

*6 In order for retaliatory conduct to rise to the level of an adverse employment action under Title VII, it "must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment...." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300-01 (3d Cir.1997). "An adverse employment action necessarily encompasses all tangible employment actions such as 'hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits." ' *Sherrod v. Phila. Gas Works,* No. 02-2153, 2003 WL 230709, *4 (3d Cir.2003) (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998)); *see also Abramson v. William Patterson Coll.,* 260 F .3d 265, 288 (3d Cir.2001) (finding termination of employment is clearly an adverse employment action). Constructive discharge is also an adverse employment action. [FN4] *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885 (3d Cir.1984). Paying an individual a lower salary for discriminatory reasons can also be an adverse employment action. *Sherrod,* 2003 WL 230709 at *4 (citing *Stanziale v. Jargowsky,* 200 F.3d 101, 105 (3d Cir.2000)). Job transfers, even without loss of pay or benefits, may, in some circumstances, constitute an adverse employment action. *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 412 (3d Cir.1999) (finding that each of two separate transfers, the first depriving a teacher of the opportunity to teach physics and the second placing the teacher in a "difficult school," constituted adverse employment actions); *DiIenno v. Goodwill Indus.,* 162 F.3d 235, 236 (3d Cir.1998) ("Transfer to a job that an employer knows an employee cannot do may constitute adverse employment action for purposes of Title VII retaliation action."); *Torre,* 42 F.3d at 831 n. 7 (finding that transfer to a dead end job because of age may constitute an adverse employment action for ADEA claim); *see also McGrenaghan v. St. Denis Sch.,* 979 F.Supp. 323 (E.D.Pa.1997) (finding an adverse employment action under the ADA where transfer resulted in "significantly diminished job responsibilities.").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

(Cite as: 2005 WL 850855 (D.Del.))

FN4. Under Title VII, an employer constructively discharges an employee if "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 888 (3d Cir.1984).

The Third Circuit has found that oral and written reprimands are insufficient to establish an adverse employment action. *Robinson,* 120 F.3d at 1300 (finding that oral reprimands did not rise to the level of what Third Circuit cases have described as adverse employment action); *Weston v. Pennsylvania,* 251 F.3d 420, 431 (3d Cir.2001) ("Weston failed to establish how these two [written] reprimands effect a material change in the terms or conditions of his employment. We cannot, therefore, characterize them as adverse employment actions."). Furthermore, "unnecessary derogatory comments" do not amount to adverse employment actions. *Robinson,* 120 F.3d at 1300 (3d Cir.1997) (finding that "unnecessary derogatory comments" do not rise to the level of what Third Circuit cases have described as adverse employment actions).

*7 The Third Circuit also has not had the opportunity to discuss causation, the third step in the *McDonnell Douglas* burden shifting framework, for a FMLA claim. Once again, the Third Circuit's analysis of causation under Title VII, the ADA, and the ADEA provides helpful guidance. Cases examining causation under Title VII, the ADA, and the ADEA have often focused on the "temporal proximity between the employee's protected activity and the adverse employment action, because this is an obvious method by which a plaintiff can proffer circumstantial evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action." ' *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1997) (citing *Zanders v. Nat'l R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990)). In *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989), the Third Circuit found that where an alleged retaliatory action occurred two days after the plaintiff engaged in a protected activity, the plaintiff

demonstrated a causal link. However, the Third Circuit has subsequently limited the applicability of *Jalil:*

We believe that, if *Jalil* is to be interpreted as holding that timing alone can be sufficient [to establish causation], that holding must be confined to the unusually suggestive facts of *Jalil.* Thus, even if timing alone can prove causation where the discharge follows only two days after the complaint, the mere fact that the adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events.

*Robinson,* 120 F.3d at 1302; *see also Weston,* 251 F.3d at 431 n. 5.

B. FMLA Analysis

With respect to the FMLA, plaintiff only alleges a retaliation claim against defendant. (D.I. 1 at 6; D.I. 52 at 16) There is no dispute that the first element of a prima facie case of retaliation has been established. Plaintiff and defendant are in agreement that on two separate occasions, plaintiff took leave under the FMLA. (D.I. 47 at 7, 11; D.I. 52 at 7, 9).

Plaintiff has identified the following adverse employment actions: (1) Bellamy's "constant" harassment of plaintiff [FN5] (D.I. 52 at 18); (2) Bellamy's reference to plaintiff as "psycho" and "mental" in conversations with management level employees and a temporary pharmacist (*id.*); (3) Bellamy's "invasion of plaintiff's privacy" by having a camera installed to surveil plaintiff's work (*id.*); (4) the final warnings that plaintiff received (*id.* at 19); (5) the 2003 Evaluation, which was lower than the 2002 Evaluation (*id.*); (6) relieving plaintiff of her scheduling duties and her Committee position (*id.*); (7) instigation of a false incident report filed by Weber against plaintiff (*id.* at 19); [FN6] (8) plaintiff's constructive discharge (*id.*); (9) Thomas' call to plaintiff's home while she was on leave (*id.* at 20); and (10) verbal reprimands for alleged negative communications with Weber (*id.*).

FN5.   Plaintiff   described   "constant"

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

**(Cite as: 2005 WL 850855 (D.Del.))**

harassment as including "a two and one-half hour meeting in January 2003 (soon after [p]laintiff had returned from taking her second FMLA leave), when Bellamy called plaintiff a 'b--ch' and told [p]laintiff that she was "nasty" and ruined [Bellamy's] life and career, as well as instruct[ed] other employees to ostracize [p]laintiff." (D.I. 52 at 18)

FN6. The court finds this allegation is not supported by the record. *See* D.I. 53 at B54.

**\*8** Of the adverse employment actions identified by plaintiff, only her claim of being constructively discharged is "serious and tangible enough" to be considered as altering plaintiff's terms, conditions or privileges of employment. *Robinson,* 120 F.3d at 1300-01. [FN7] Moreover, the court finds that plaintiff has adduced minimally sufficient evidence [FN8] to support the inference that she was in fact constructively discharged and that there is a causal connection between her discharge and her FMLA leave, when considering the totality of the circumstances described by plaintiff during her employment in 2002-2003.

FN7. Third Circuit caselaw indicates that derogatory statements and verbal reprimands do not amount to adverse employment actions. *Robinson,* 120 F.3d at 1300; *Weston,* 251 F.3d at 431. Similarly, such conduct as a single telephone call in violation of company policy and the installation of surveillance cameras in the general work place do not constitute tangible alterations in plaintiff's conditions or privileges of employment. There is no evidence of record that plaintiff's 2003 Evaluation had a tangible effect on her compensation. Finally, there is no convincing evidence of record that the scheduling duty and the Committee position were significant enough responsibilities among those plaintiff held as Head Pharmacist that relieving her of these duties while she was on leave

constituted an adverse employment action. Of course, this conduct may be considered in evaluating plaintiff's claim of constructive discharge.

FN8. In addition to her allegations in this regard, plaintiff has presented two affidavits of Joan Siler, a former Target employee, in support of her allegations. (D.I.57, 59) To the extent that Ms. Siler avers to her knowledge of facts, the affidavits shall be considered by the court for purposes of the motion practice. To the extent Ms. Siler draws legal conclusions from these facts, the court has not considered such. Defendant's motion to strike (D.I.60) is granted in this regard, but otherwise denied, as Ms. Siler was sufficiently identified through discovery. Plaintiff's motion for leave to file (D.I.64) is granted, consistent with the above.

Having demonstrated a prima facie case of retaliation under the FMLA, it is defendant's burden to articulate a legitimate, nondiscriminatory reason for the employment action. In this regard, defendant denies the allegations that derogatory comments were made and argues in large measure that it was justified in its responses to plaintiff's job performance as Head Pharmacist. Especially in light of defendant's arguments that plaintiff's 2003 Evaluation and the change in her job responsibilities were due, at least in part, to her long absences from work (when she happened to be on FMLA leave), the court declines to make the credibility determinations a jury should make under these circumstances, and concludes that there are genuine issues of material fact that preclude the entry of a summary judgment in favor of defendant.

C. Americans with Disabilities Act

The ADA prohibits discrimination by an employer against a "qualified individual." 42 U.S.C. § 1112 (2003). To establish a prima facie case, a plaintiff must demonstrate that: (1) she has a disability within the meaning of the statute; (2) she is otherwise qualified to perform the essential

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                   Page 8

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

**(Cite as: 2005 WL 850855 (D.Del.))**

functions of the job, with or without accommodations by the employer; and (3) as a result of her disability, she has suffered an adverse employment action. *See Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751 (3d Cir.2004); *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir.2000) ; *Deane v. Pocono Med. Ctr.,* 142 F.3d 138, 142 (3d Cir.1998).

The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2003). In the present case, plaintiff claims relief under the third classification of covered individuals, namely, those who are regarded as having a substantially limiting impairment. [FN9] (D.I. 52 at 24) To be "disabled" under the "regarded as" portion of the ADA's definition of disability, plaintiff must demonstrate either that: (1) although she had no impairment at all, defendant erroneously believed that she had an impairment that substantially limited major life activities; or (2) she had a non-limiting impairment that the defendant mistakenly believed limited a major life activity. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999); *Tice v. Ctr. Area Transp. Auth.,* 247 F.3d 506, 514 (3d Cir.2001).

> FN9. Plaintiff concedes that, given the current state of ADA law, it would be difficult for her to establish that she has a physical or mental impairment that substantially limits one or more of her major life activities. (D.I. 52 at 24) According to plaintiff, her "life history since her constructive discharge by [d]efendant has exhibited an improvement of her mental health. Thus, given the apparent non-permanence of her mental impairment, it is unlikely that she could establish an actual substantial limitation of one or more of her major life activities due to the impairment." (*Id.*)

*9 Plaintiff claims that defendant, through its agent Bellamy, regarded plaintiff as having a disability. (

*Id.*) Specifically, plaintiff states, "Bellamy constantly referred to [p]laintiff as 'psycho' and 'mental' both with management-level employees and with those assigned to substitute for [p]laintiff during her periods of leave." [FN10] (*Id.*) Plaintiff claims that "it is certainly plausible that Bellamy regarded [p]laintiff as having a severe mental impairment, and that this constituted at least a partial and substantial motivation in the numerous and adverse employment actions ... that Bellamy took against plaintiff." (D.I. 52 at 24)

> FN10. Bellamy, however, denies having ever made such statements. (D.I. 53 at B100-B101) Furthermore, Jane Webb testified in her deposition that she never heard Bellamy refer to plaintiff as "psycho" or "mental." (D.I.57, ex. 23)

The record does not support plaintiff's position in this regard. The Siler affidavits, plaintiff's sole source of evidence that Bellamy made these statements (D.I. 52 at 10), classified Bellamy's statements as "derogatory," suggesting that Bellamy did not genuinely believe that plaintiff suffered a mental impairment. (D.I. 53 at B13) Indeed, the record, seen in a light most favorable to plaintiff, indicates that Bellamy expressed frustration and anger over plaintiff's FMLA leave, that plaintiff was getting paid to sit at home during the holidays while other employees were working, and that plaintiff was abusing the system for reasons that had nothing to do with a valid medical reason. (D.I.59) Consequently, the record demonstrates that if Bellamy did refer to plaintiff as "psycho" and "mental," he did so disparagingly, and did not believe that plaintiff suffered a serious mental impairment. As a result, the court grants defendant's motion for summary judgment with respect to plaintiff's ADA claim.

**D. Implied Covenant of Good Faith and Fair Dealing**

Under the common law, an employee is considered "at-will" and may be dismissed from employment at any time without cause and regardless of motive. *See Merrill v. Crothall-Am., Inc.,* 606 A.2d 96

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

**(Cite as: 2005 WL 850855 (D.Del.))**

(Del.Super.1992). Delaware law, however, has evolved from the harshness of the "employment-at-will" doctrine. It now recognizes a limited implied covenant of good faith and fair dealing exception to protect at-will employees from wrongful termination. *Id.* Nevertheless, the Delaware Supreme Court has limited the application of this exception to four narrowly defined categories: (1) where the termination violated public policy; (2) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or to remain in her present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past services; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. *Lord v. Souder,* 748 A.2d 393, 400 (Del.2000) (citing *E.I. Dupont de Nemours & Co. v. Pressman,* 679 A.2d 436, 442-44 (Del.Super.1996) ). "Plaintiff's breach [of implied covenant of good faith and fair dealing] claim rests squarely under the first category, the public policy exception." (D.I. 52 at 25) The court, therefore, focuses its analysis solely on whether defendant's alleged constructive discharge of plaintiff violated public policy.

*10 To demonstrate a breach of the covenant of good faith and fair dealing under the public policy category, an employee must satisfy a two-part test: (1) the employee must assert a public interest recognized by some legislative, administrative, or judicial authority; and (2) the employee must occupy a position with responsibility for advancing or sustaining that particular interest. *Lord,* 748 A.2d at 401 (citing *Pressman,* 679 A.2d at 441-42). The parties agree for purposes of this motion that plaintiff was in a position with responsibility for ensuring that defendant's pharmacy operated in compliance with Delaware law, thereby satisfying the second prong of the two-part test. (D.I. 47 at 28; D.I. 52 at 26) Consequently, the court need only decide the first prong, namely, whether defendant terminated plaintiff's employment in violation of a clearly mandated public policy recognized by some legislative, administrative or judicial authority. (D.I. 47 at 28-29; D.I. 2 at 26)

Plaintiff claims she was subjected to severe harassment in retaliation for reporting to the State Board that Weber accepted a returned generic narcotic medication and substituted a brand-name narcotic medication without contacting the physician for the issuance of a new prescription. (D.I. 52 at 26) Plaintiff claims the following acts were harassment: (1) Thomas telling her that she should have pushed the medication to the back of the safe rather than reporting the problem to the State Board (D.I. 53 at B33-B34); (2) Thomas telling plaintiff that she handled the situation improperly (*id.* at B35); (3) Thomas telling plaintiff that he was not disturbed by Weber's failure to know all of Delaware's pharmacy laws (*id.* at B86); (4) Thomas removing plaintiff from the Committee ( *id.* at B38-B39); (5) Thomas verbally reprimanding plaintiff for negative communications with Weber ( *id.* at B2, B88-B89); (6) Thomas' email expressing a desire to "act fast and consider [plaintiff] a no show and abandoned her job[ ]" (*id.* at B1). Plaintiff claims these activities amounted to constructive discharge in violation of public policy. Even assuming that these acts amount to harassment, plaintiff has not produced any evidence that she experienced this harassment because she fulfilled her responsibilities pursuant to Delaware law. Consequently, plaintiff has failed to show she was terminated in violation of public policy.

E. Slander and 19 Del. C. § 709

Plaintiff claims that defendant violated 19 Del. C. § 709 [FN11] by providing false and misleading information to prospective employers of plaintiff. (D.I. 1 at 8) Plaintiff also claims that defendant slandered plaintiff by making false oral statements to plaintiff's potential employers. (D.I. 1 at 9; D.I. 52 at 28)

> FN11. According to 19 Del. C. § 709:
> An employer or any person employed by the employer who discloses information about a current or former employee's job performance to a prospective employer is presumed to be acting in good faith; and unless a lack of good faith is shown; is immune from civil liability for such

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 10

2005 WL 850855 (D.Del.), 10 Wage & Hour Cas.2d (BNA) 1192, 16 A.D. Cases 1319, 30 NDLR P 60

**(Cite as: 2005 WL 850855 (D.Del.))**

disclosure or its consequences ... the presumption of good faith may be rebutted upon a showing that the information of good faith by such employer was knowingly false, was deliberately misleading or was rendered with malicious purpose....
Plaintiff does not provide, and the court is unaware of, any precedent applying 19 Del. C. § 709. Consequently, it remains unclear what plaintiff's burden of proof is under 19 Del. C. § 709.

After plaintiff ceased working for defendant, she completed two rounds of interviews with a prospective employer, the Delaware Hospital for the Chronically Ill ("DHCI"). (D.I. 53 at B56) According to plaintiff, DHCI initially expressed interest in hiring plaintiff, but this interest abruptly ended after representatives of DHCI spoke with a male member of management at the Dover Store. ( *Id.*) Plaintiff claims to have subsequently spoken with two male managers at the Dover Store other than Bellamy, and each of these male managers stated they had not been contacted by a representative of DHCI. (*Id.*) Plaintiff surmises that "Bellamy was likely the only other mal[e] manager at the Dover [S]tore." (D.I. 52 at 28) However, plaintiff admits that she is not certain, one way or the other, whether Bellamy provided any information to DHCI and, if he did, what information was provided. (D.I. 53 at B56) Consequently, plaintiff has failed to establish a genuine issue of material fact for both her slander and her 19 Del. C. § 709 claims. *See, e.g., Layfield v. Beebe Med. Ctr., Inc.,* No. 95C-12-007, 1997 WL 716900, *7 (Del.Super.Ct.1997) ("Plaintiff fails to identify a specific false or defamatory communication made by any Beebe employee to a third party.... [S]imply alleging that there is circumstantial evidence of defamation is insufficient to overcome Beebe's motion for summary judgment, because [p]laintiff must allege specific facts which demonstrate a genuine issue of material fact."). Defendant's motion to dismiss plaintiff's slander and 19 Del. C. § 709 claims is granted.

V. CONCLUSION

**\*11** For the reasons set forth above, the court grants defendant's motion for summary judgment against plaintiff's ADA, breach of implied covenant of good faith and fair dealing, slander, and 19 Del. C. § 709 claims. The court denies defendant's motion for summary judgment against plaintiff's FMLA claim. An appropriate order shall issue.

ORDER
At Wilmington this 13th day of April, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion for summary judgment against plaintiff's ADA, breach of implied covenant of good faith and fair dealing, slander, and 19 Del. C. § 709 claims (D.I.46) is granted.

2. Defendant's motion for summary judgment against plaintiff's FMLA claim (D.I.46) is denied.

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV01144 (Docket)
                                        (Dec. 17, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Robert D. Goldberg, undersigned counsel of record, hereby certify that on August 11, 2005, I caused a copy of the attached ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS to be served on the following in the manner indicated:

**VIA CM/ECF ELECTRONIC FILING**

Barry M. Willoughby, Esquire
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

/s/ Robert D. Goldberg
Robert D. Goldberg (I.D. #631)